# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| LAURA PICCIONE,<br><br>Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Respondent. | Case No. 1:10-cv-00509-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Now pending before the Court is Petitioner Laura Piccione's Petition for Review (Dkt. 1), filed October 11, 2010, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On March 15, 2005, Laura Piccione ("Petitioner" or "claimant") applied for Social Security Disability Insurance Benefits and SSI disability benefits, alleging a disability onset date of November 10, 2004, when she was 53 years old. (AR 15, 32, 332). Administrative Law Judge ("ALJ") Lloyd E. Hartford conducted a hearing and issued a decision on July 19, 2007, denying Petitioner's claim for disability. (AR 332-41). Petitioner untimely requested review by the Appeals Council, but the Appeals Council found good cause for the late request. (AR 351). On July 31, 2009, the Council remanded the application to the ALJ to obtain treatment records

**MEMORANDUM DECISION AND ORDER - 1**

and, if warranted, to obtain supplemental evidence from a vocational expert as to whether Petitioner can perform her past relevant work. (AR 352-53).

While the Appeals Council was considering her appeal, on March 26, 2008, Petitioner filed a second Social Security Disability benefits application. (AR 15). Petitioner's claim was initially denied and, again, denied on reconsideration. (AR 354, 359). Petitioner timely filed a Request for Hearing before an ALJ. Both the first and second applications were consolidated for decision. On November 3, 2009, ALJ Lloyd E. Hartford presided over the second hearing, held in Boise, Idaho, at which time Petitioner, represented by attorney Jacob Bernhardt, appeared and testified. (AR 690-775). A vocational expert, Beth Cunningham, also appeared and testified. At the time of the hearing, Petitioner had past relevant work as a bus driver and administrative assistant. (AR 24).

On March 16, 2010, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 23-38). Petitioner timely requested review from the Appeals Council on May 13, 2010. (AR 647-49). The Appeals Council considered additional evidence submitted into the record and then denied review on September 17, 2010 (AR 8-10), rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits, arguing that the ALJ failed to consider Petitioner's upper extremities' limitations, did not properly support his finding that Petitioner's testimony and allegations are not credible, and erred when he did not categorize Petitioner's breast cancer as a severe impairment. Pet.'s Br., pp. 11-12.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and

regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA after November 10, 2004, the alleged onset date. (AR 17). Petitioner does not dispute this finding.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: fibromyalgia, headaches, and obesity. (AR 17). Petitioner argues that her osteoarthritis and breast cancer should have been considered to be severe.

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 18-19). Petitioner disagrees.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). (AR 19). The ALJ concluded that Petitioner is capable of performing past relevant work as an administrative assistant and is not disabled. (AR 24). Accordingly, the ALJ did not reach the fifth step, which considers whether the Petitioner retains the ability to do alternate work and whether such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

**B.      Analysis**

   1.   <u>ALJ's Credibility Assessment</u>

The ALJ determined that Petitioner's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found Petitioner's "statements concerning the intensity, persistence and limited effects of those symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment." AR 21. Petitioner argues that the ALJ did not properly support his finding that her testimony and allegations were not credible. Pet.'s Br., pp. 15-18 (Dkt. 13).

In determining whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" The ALJ here found that Petitioner had submitted evidence of such underlying impairment. Because Petitioner met the first step of the analysis, and there does not appear to be any evidence of malingering, the ALJ can reject the Petitioner's testimony about the severity of the symptoms only "by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Smolen*, 80 F.3d at 1281). These reasons must be supported by substantial evidence in the record. *Reginnetter v. Cmm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002).

**MEMORANDUM DECISION AND ORDER - 7**

When determining credibility, the ALJ may consider:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence."

*Lingenfelter*, 504 F.3d at 1040. *See also, Light v. Soc. Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997) (stating claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms are all properly considered by an ALJ in a credibility determination). Additionally, an ALJ's observations of a claimant's manner and demeanor do not render his decision improper when his decision is only partially based on those observations. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *see also Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985) (stating that ALJ's inclusion of personal observation was not improper when ALJ also considered Petitioner's testimony, opinions of treating and examining physicians, and objective medical evidence).

Here, the ALJ discussed the evidence he considered in making the credibility determination. First, the ALJ noted that Petitioner has been on chronic narcotic therapy for pain, which weighed in her favor, but noted that her treating physician's "notes for the last five years show the pain medication is fairly effective in managing her pain, her pain complaints have not escalated and narcotic pain dosage has not escalated, and there are no complaints of uncontrolled pain." AR 21. The ALJ cites to several treatment notes in the record to support this observation. Although Petitioner points to other notes in the record that she argues "make repeatedly clear that [Dr. O'Brien] only hoped for a 50% improvement in her pain level," Pet.'s Reply Br., p. 2

**MEMORANDUM DECISION AND ORDER - 8**

(Dkt. 17), the records also contain notes that support the ALJ's view that Petitioner's pain is effectively managed. For instance, one of the records Petitioner cites contains a statement by Dr. O'Brien that "we're right on track . . . she's > 50% better w/ was our goal." AR 231 (cited by Petitioner at Docket 17, p. 2). *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (explaining that use of effective medications may undermine a claimant's alleged limitations).

Second, the ALJ considered Petitioner's testimony that she cannot work due to fatigue, but found that no physician had indicated a medical need existed for excessive rest or inactivity. AR 21. The ALJ noted that Dr. O'Brien had advised Petitioner to exercise. *Id. See also*, *e.g.*, AR 216.

Third, the ALJ considered Petitioner's work history and found that her "allegations of an inability to work appear to be mostly related to her inability to return to her usual past occupation as a city bus driver." AR 22. The ALJ noted that Petitioner was off work for only a brief period of time and then worked for over a year after the car accident she alleges caused some of her disabling symptoms. Nonetheless, the ALJ found that an inability to drive a bus for eight hour days is not a totally incapacitating limitation and Petitioner's medical conditions, pain, and narcotic use have never stopped her from driving her own vehicle. AR 22.

Fourth, the ALJ considered Petitioner's activities of daily living and explained that "[w]hile her activities are not extensive, she is able to do usual activities such as household chores, read, watch TV, and drive," and this "shows adequate use of her upper extremities and adequate attention." AR 22. While a claimant does not have to be "utterly incapacitated" to be considered disabled, if a claimant engages in numerous daily activities involving skills that could

**MEMORANDUM DECISION AND ORDER - 9**

be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). The activities cited by the ALJ do not necessarily demonstrate an ability for Petitioner to perform all work activities, but the ALJ relied on them to assess Petitioner's use of her upper extremities and explained that "while not the only factor, her pain has been managed fairly well with medication." AR 22. Thus, the ALJ considered Petitioner's daily activities in a limited setting and in conjunction with several other factors in assessing Petitioner's credibility.

The fifth factor the ALJ considered in making his credibility determination were statements Petitioner made at the hearing. The ALJ stated:

> Regarding the functional limitations set forth by Dr. O'Brien, the claimant testified several times she was present when her doctor completed the forms and he put down what she told him and stated how would he know otherwise. When the undersigned pointed out to her that Dr. O'Brien indicated she can sit a total of 8 hours and stand/walk a total of 4 hours . . .; she denied that she told Dr. O'Brien that and suggested her doctor wrongly circled that on the form.

AR 22. The hearing transcripts provide support for the ALJ's finding that Petitioner's statements were inconsistent. Upon questioning, Petitioner first stated that Dr. O'Brien asked her questions and she told him how long she had to lie down and how long she could sit at one time when he completed a residual functional capacity evaluation. AR 725- 27. She explained "how's . . . he going to know if he don't have me there?" and then she acknowledged that she was in Dr. O'Brien's office the day the evaluation was completed. AR 728; *see also* AR 484. After further questioning, when the ALJ pointed out that Dr. O'Brien reported Petitioner could

**MEMORANDUM DECISION AND ORDER - 10**

sit eight hours and stand or walk for four hours in an eight hour workday, Petitioner said she was not sure she told Dr. O'Brien anything on the day he completed the evaluation, that his assessment is contrary to her actual abilities because she can only sit for two and walk for one and stand for one, and later that she "didn't tell him" what to put on the form. AR 729.

Petitioner argues that "the ALJ's questioning on [the] matter was extensive and largely accusatory," and it caused her to become flustered and start equivocating on some answers. Pet.'s Br., p. 17 (Dkt. 13). It is often hard to glean from a transcript the tone of a hearing, but the record indicates some testiness in the exchange between Petitioner and the ALJ. It appears that both the ALJ and the Petitioner were frustrated in trying to either understand the questions or the responses. However, the ALJ asked the questions several times, in several ways, in what appears to be an attempt to get answers to his questions and then to get an explanation for any inconsistencies. This was an appropriate subject of inquiry. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." Social Security Ruling 96-7p, 1996 WL 374186 at *5 (July 2, 1996).

Here, even if the Court were to discount the inconsistencies in Petitioner's statements by adopting Petitioner's view that the answers were equivocal because of the nature of the ALJ's questioning, her statements that she could sit only two hours and walk or stand only one would still be inconsistent with Dr. O'Brien's report that she could sit for eight hours and walk or stand for four. Additionally, whatever the ALJ's mind set in questioning Petitioner may have been, the evidence he relied on was appropriately considered in the context of the record in this case. Accordingly, the Court finds substantial evidence, based both on the Petitioner's inconsistent

**MEMORANDUM DECISION AND ORDER - 11**

answers, and their inconsistency with some of Dr. O'Brien's report, to support the ALJ's consideration of inconsistencies in his credibilty determination.

The sixth and final factor the ALJ considered in assessing Petitioner's credibility was his own observations of Petitioner:

> During her Social Security hearing which lasted nearly two hours, she stood once or twice and then she sat down again and did not appear to be in actual discomfort. She was also able to testify in a coherent relevant manner for two hours, understood and tracked questions, and paid attention.

AR 22. The ALJ put his observations in context, explaining that "[t]he observations regarding the claimant's appearance and demeanor while testifying *were but one factor* which [was] considered in conjunction with the other evidence of record." AR 22 (emphasis added).

Standing alone, this limited observation would not amount to a clear and convincing reason to reject Petitioner's testimony about the intensity, persistence, and limiting effects of her symptoms. However, taking all of the ALJ's considerations together in the context of the record, they amount to substantial evidence supporting clear and convincing reasons for the ALJ's credibility finding. Although there is evidence in the record to the support Petitioner's view, and the Court does not dispute that Petitioner has medical issues that appear to cause her some difficulties, this Court's role on review is not to assess Petitioner's credibility and determine whether she is disabled. Rather, this Court is required to consider whether there is enough evidence to support the ALJ's findings and decision. Here, there is. The Court will not engage in second-guessing, *see Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002), because, if the evidence can support either outcome, the Court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

2. Petitioner's Impairments

   i. *Breast Cancer*

Petitioner was diagnosed with breast cancer afer a mammogram performed on February 2, 2009 detected a mass in her breast, she had a partial mastectomy on March 4, 2009, and had radiation and chemotherapy treatment. AR 589, 603, 632. She argues that the ALJ erred by not categorizing her breast cancer as a severe impairment. Pet's Br., pp. 18-19 (Dkt. 13).

A severe impairment is one that has lasted or is expected to last for a continuous period of twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505, 404.1509, 416.905, 416.909; *Barnhart v. Walton*, 535 U.S. 212, 217 (2002). In this regard, the ALJ found that Petitioner's "breast cancer and residuals of treatment did not last and/or remain severe for 12 months." AR 18. The Appeals' Council was presented with additional treatment records for treatment of lymphedema[1], an issue related to the breast cancer, that the ALJ did not have access to. The Council considered the ALJ's determination and the new evidence[2] and concluded:

> The additional evidence indicates that your breast cancer chemotherapy ended in December 2009, you were treated for mild lymphedema from November 2009 through January 2010, had normal upper extremity venous exams, and a negative/benign mammogram in March 2010. This does not establish that you are more limited than found by the [ALJ].[3]

---

[1] "Lymphedema is swelling as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region." *Slayton v. Apfel*, No. 98-1885, 1999 WL 152614, *1 (4th Cir. Mar. 22, 1999) (citing STEDMAN'S MEDICAL DICTIONARY 1004 (26th ed. 1995)).

[2] The new evidence considered by the Appeals Council are medical records from St. Luke's Regional Medical Center related to treatment of Petitioner's breast cancer and lymphedema between October 29, 2009 and March 8, 2010. *See* AR 652-88.

[3] The Appeals Council must consider new and material evidence relating to the period on or before the date of the ALJ's decision and shall "evaluate the entire record including the new

**MEMORANDUM DECISION AND ORDER - 13**

AR 9 (footnote added); *see also* AR 652, 654. Although Petitioner acknowledges in her brief that "[p]hysical therapy for her lymphedema lasted through January 12, 2010, when she was discharged after having received the tools necessary to help her treat the lymphedema herself," she points out that the therapist ordered a re-evaluation and new compression garments every 6-12 months. Pet.'s Br., pp. 18-19 (Dkt. 13); *see also* AR 681. Petitioner argues that "[c]learly the swelling and pain had not fully abated by this discharge date, and the lymphedema was expected to be an ongoing problem." Pet.'s Br., p. 19.

As Respondent points out, Petitioner was discharged with a note that treatment "achieved 100% of goals." AR 681. Additionally, the Appeals Council cited to the normal upper extremity venous exams and found the lymphedema to be mild. Although the possibility exists that Petitioner will continue to have issues with lymphedema, she was released from therapy for this condition after achieving the goals of her therapy. It is the Petitioner's burden to demonstrate the 12-month duration of her breast cancer and residuals, and also the severity of that condition. Considering the evidence before the ALJ, and the Appeals Council's finding that the new evidence does not impact the ALJ's decision as to Petitioner's work-related limitations, the Court will not overturn the ALJ's determination that the Petitioner failed to meet the duration or severity requirements.[4]

---

and material evidence" and "then review the case if it finds the [ALJ's] action, findings, or conclusion is contrary to the weight of the record." 20 C.F.R. 404.970.

[4] The decision at issue on appeal is the ALJ's decision. Because the question on judicial review is whether the final decision of the Commissioner is supported by substantial evidence, the status of new evidence in a case such as this one presents an issue for the reviewing court. *See* 42 U.S.C. § 405(g). When the Appeals Council denies review, the decision of the ALJ is the final decision. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Browning v. Sullivan*, 958 F.2d

**MEMORANDUM DECISION AND ORDER - 14**

### ii. Upper Extremities

Petitioner also argues that the ALJ erred by failing to assess the functional limitations associated with her osteoarthritis in her hands and shoulder, as well as her lymphedema. Pet's Br., pp. 12-15 (Dkt. 13). With regard to the lymphedema, the medical records associated with that diagnosis were provided to the Appeals Council after the ALJ issued his unfavorable decision. Thus, there was no error in how the ALJ assessed functional limitations relative to the lymphedema as he had no records to consider.

With regard to Petitioner's hand and shoulder ailments, Petitioner argues that they had more than a minimal effect on her ability to work and the ALJ should have either characterized them as severe impairments or, in the alternative, considered their impact when assessing Petitioner's residual functional capacity ("RFC"). Pet's Br., p. 12 (Dkt. 13). Petitioner relies on a December 15, 1994 report from an orthopaedic surgeon, Michael Phillips, to support her claimed limitations. *Id.*; see also AR 512-17. She notes that she had complained to Dr. Phillips about pain and swelling when doing keyboard work and told Dr. Phillips that "she had been advised to avoid keyboard work and has limited her activities to filing and other clerical duties." AR 514. Both of these statements are based on Petitioner's self-report and not Dr. Phillips's

---

817, 822 (8th Cir. 1992); *Russell v. Brown*, 856 F.2d 81, 83-84 (9th Cir. 1988); 20 C.F.R. §§ 404.955; 404.967 *et seq.*; 416.1455; 416.1467. Only if the Appeals Council grants review, and then issues a decision on the merits, does the Appeals Council's decision become the final decision of the Commissioner. *Russell*, 856 F.2d at 83-84; *Browning*, 958 F.2d at 822.

However, because the Commissioner here does not contest whether the evidence submitted to the Appeals Council should be considered by this court, *see Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993), the new evidence will become part of the record on review, even though that evidence was never before the ALJ. "We properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review." *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000).

**MEMORANDUM DECISION AND ORDER - 15**

opinion. Additionally, the remainder of Dr. Phillips's report does not support Petitioner's claim of severe limitations.

Dr. Phillips's report states that, in 1994, Petitioner had "no restriction of abduction, forward flexion, internal or external rotation" in her shoulder. AR 516. Although the report diagnoses Petitioner with osteoarthritis of the small joints of the hands, and states that Petitioner's condition is "permanent and stationary," it goes on to state that Dr. Phillips detects "no measurable permanent physical impairment." AR 517. Dr. Phillips also opines:

> At present I see no contraindication to the patient continuing in her present usual and customary occupation [working in a clerical position at U.S. West Communications]. *I do not believe restrictions are necessary at this time*. Treatment, I believe, can be limited to the usage of palliative over the counter medication as required.

AR 513, 517 (emphasis added). *See also* AR 521 (January 10, 1994 radiology report of imaging for Petitioner's hands and wrists stating: "The soft tissues are normal. There is minimal hypertrophic spurring at the articular margins of a few of the . . . joints. . . . Minimal osteoarthritis. This is of questionable significance.").

Petitioner argues that because of the "degenerative nature" of osteoarthritis, her "condition will not have improved, but will have further degraded over the subsequent years." Pet.'s Br., p. 16 (Dkt. 13). However, Petitioner cites no medical record evincing that the condition has degraded or to what degree. Petitioner urges the Court to "presume that if [she] attempted to return to work in an office setting where typing was required, her symptoms would return." *Id.* This Court cannot make presumptions about Petitioner's limitations, rather, the Court's review is limited to whether the existing record provides adequate support for the ALJ's decision. Moreover, a report by Petitioner's treating physician in 2008 states that she would be

able to grasp, turn and twist objects with her hands and engage her fingers in fine manipulation 100% of the time in an eight hour work day. AR 489

A similar circumstance is at issue with Petitioner's shoulder problem. Petitioner relies on a report from September 4, 2001 to support her claimed shoulder limitations. *Id.*; AR 153-58. This report is from three years prior to the disability start period. Although information from before the period of disability is relevant, these reports do not establish a limitation that continued into the period of claim disability. Additionally, the report from her last visit (on February 28, 2000) to the orthopaedist who performed her shoulder surgery, states:

> [Petitioner] is seven months status post her left shoulder arthroscopy with subacromial decompression and acromioclavicular joint resection. [She] states that she is doing much better. Her shoulder is significantly improved when compared to preoperatively. She has become more functional and only complains of occasional mild discomfort in her shoulder. At her work place they have done away with the nonpower steering vehicles thus she is able to drive all available vehicles. She states she tolerates this well with some occasional discomfort. . . . . She has 5/5 strength to resist forward elevation and external rotation and internal rotation. . . . [She] is doing excellent and at this point I believe she has reached her maximal medical improvement. *I have no restrictions for Laura now nor do I have restriction for her in the future*.

AR 147 (emphasis added). Again, the Court cannot surmise from these records that "further deterioration is likely." Pet.'s Br., p. 17 (Dkt. 13).

Thus, the only evidence in the record that supports Petitioner's argument that her osteoarthritis in her hands and shoulders limit her ability to work during the period of alleged disability (2004-2010), are assessments completed by Petitioner's treating physician, Dr. Michael O'Brien, a neurologist, AR 220-23, 488-89, and one record indicating that Petitioner

**MEMORANDUM DECISION AND ORDER - 17**

was prescribed pain medications after complaining of pain across her shoulders and back, AR 467.

Dr. O'Brien completed his first assessment for Standard Insurance Company on March 1, 2005 and checked boxes stating that Petitioner would only be able to "occasionally" reach at, below, and above shoulder level. AR 221. Dr O'Brien's second assessment was an RFC Questionnaire competed in September of 2008, in which he reports that Petitioner would only be able to reach 25% of the time during an eight-hour workday. AR 489. That same report found that she would be able to grasp, turn and twist objects with her hands and engage her fingers in fine manipulation 100% of the time in an eight hour work day. *Id.* Thus, the only issue is whether the ALJ properly discounted Dr. O'Brien's assessment about Petitioner's reaching limitations as he did not assess hand limitations.

The ALJ explained his reasons for not adopting Dr. O'Brien's reaching restriction:

> Dr. O'Brien did not impose functional restrictions during the course of treatment and treatment records did not support limitations regarding use of her upper arms, he characterized her pain as being under control as long as she took her medication and her condition as being stable, and he mentioned no observations of marked or extreme functional loss on examinations in the five years he has treated her.

AR 23. The ALJ also gave little weight to Dr. O'Brien's restrictions on Petitioner's arm use (and other assessments) because "it is evident that he relied heavily on claimant's subjective report of her symptoms and limitations." AR 23. Finally, the ALJ relied on RFC assessments performed by non-examining state agency physicians. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (explaining that the ALJ must give specific, legitimate reasons for rejecting

*controverted* medical opinions and may do so by summarizing the conflicting evidence in detail and interpreting it).

The ALJ "may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole . . . or by objective medical findings[.]" *Batson*, 359 F.3d at 1195 ("The ALJ discounted Dr. Keenen's view because it was in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of Batson's medical condition, and was based on Batson's subjective descriptions of pain."); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (explaining that the ALJ need not consider those limitations which depend on the petitioner's subjective complaints if petitioner's complaints have not been deemed credible). The Court concludes the ALJ appropriately considered Petitioner's alleged hand and shoulder limitations and weighed the evidence of record in assessing the RFC.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's

determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

## V. ORDER

Based on the foregoing, Petitioner's Petitioner for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED: **March 28, 2012.**

Honorable Ronald E. Bush
U. S. Magistrate Judge